IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CARLETTA MOORE,

               Plaintiff,

vs.                                     Case No. 10-1242-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

               Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On June 1, 2009 administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 9-18). Plaintiff alleges that she has been disabled since February 14, 2006 (R. at 9). Plaintiff is insured for disability insurance benefits through June 30, 2009 (R. at 11). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 11). At step two, the ALJ found that plaintiff had the following severe

4

impairments: arthritis in the hips and knees, status-post hysterectomy and related surgery, carpal tunnel syndrome, and adjustment disorder (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12). After determining plaintiff's RFC (R. at 13), the ALJ found at step four that plaintiff has no past relevant work (R. at 17). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 17-18). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 18).

**III. Are the ALJ's RFC findings supported by substantial evidence?**

The ALJ made the following RFC findings in this case:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She cannot perform work involving continuous rapid repetitive hand movements, but can perform work involving other frequent handling and fingering. In addition, the claimant should avoid concentrated exposure to temperature extreme and is limited to work of simple to intermediate complexity.

(R. at 13).

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical

5

evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).

The court will first examine the medical evidence pertaining to plaintiff's mental impairments and limitations. Dr. Molly Allen, a psychologist, performed a mental status exam on the plaintiff on June 11, 2008. She indicated in her report that plaintiff's diagnoses of dysthymic disorder and adjustment disorder, in and of themselves, would probably not interfere with plaintiff's ability to work (R. at 342). Dr. Allen concluded her report as follows:

> ABILITY TO SUSTAIN WORK-RELATED SKILLS: Ms. Moore is capable of understanding and carrying out simple instructions. <u>Her level of fatigue may sometimes get in the way of her sustaining concentration</u>, but she has good people skills, can generally get along well with others, and take directions from supervisors. In the past, she has been somewhat impulsive with jobs, but that was back in her drug using days. She is adaptable to the demands of a work environment including productivity, punctuality, and

> attendance. She may not be very consistently
> persistent right now, but she does have the
> potential to do better in this area, and she
> certainly is able to manage financial
> resources at her disposal.

(R. at 342, emphasis added). It is apparent from the ALJ's decision that he gave considerable weight to the opinions of Dr. Allen in his decision.

A psychiatric review technique form (PRTF) and a mental RFC assessment was also filled out by a non-examining professional, Dr. Cohen, on June 19, 2008 (R. at 354-367 (Exhibit 12F), 368-372 Exhibit 13-14F). On the PRTF form, Dr. Cohen found that plaintiff had mild difficulties in activities of daily living, and in maintaining social functioning; he further found that plaintiff had moderate difficulties in maintaining concentration, persistence, or pace (R. at 364). On the mental RFC assessment, Dr. Cohen found that plaintiff was moderately limited in 4 categories:

> 3. The ability to understand and remember detailed instructions.
>
> 5. The ability to carry out detailed instructions.
>
> 6. The ability to maintain attention and concentration for extended periods.
>
> 12. The ability to interact appropriately with the general public.

(R. at 368-369). The ALJ stated the following regarding the opinions of Dr. Cohen:

7

>       The undersigned also agrees with the opinions
>       of the State agency medical psychologists
>       [i.e., Dr. Cohen] who provided a Psychiatric
>       Review Technique Form (PRTF) and determined
>       that the claimant's mental impairments caused
>       mild restrictions in activities [of daily
>       living]; mild limitations in maintaining
>       social functioning; moderate difficulties in
>       maintaining concentration, persistence or
>       pace; and no episodes of decompensation
>       (Exhibit 12F).

(R. at 17). Thus, the ALJ indicated that he agreed with the opinions of Dr. Cohen, and referenced his findings on the PRTF form; however, the ALJ did not reference the findings of Dr. Cohen on the mental RFC assessment.

According to SSR 96-8p:

>       The psychiatric review technique described in
>       20 CFR 404.1520a and 416.920a and summarized
>       on the Psychiatric Review Technique Form
>       (PRTF) requires adjudicators to assess an
>       individual's limitations and restrictions
>       from a mental impairment(s) in categories
>       identified in the "paragraph B" and
>       "paragraph C" criteria of the adult mental
>       disorders listings. The adjudicator must
>       remember that the limitations identified in
>       the "paragraph B" and "paragraph C" criteria
>       are not an RFC assessment but are used to
>       rate the severity of mental impairment(s) at
>       steps 2 and 3 of the sequential evaluation
>       process. The mental RFC assessment used at
>       steps 4 and 5 of the sequential evaluation
>       process requires a more detailed assessment
>       by itemizing various functions contained in
>       the broad categories found in paragraphs B
>       and C of the adult mental disorders listings
>       in 12.00 of the Listing of Impairments, and
>       summarized on the PRTF.

1996 WL 374184 at *4. Thus, the PRTF form is used to determine the severity of a mental impairment at steps 2 and 3 of the

8

sequential evaluation process, while a mental RFC assessment form is used to determine a claimant's RFC at steps 4 and 5.[1]

Plaintiff argues that the ALJ erred by failing to either include all the limitations set forth by Dr. Cohen in his mental RFC assessment, or, in the alternative, providing a reasonable explanation for not including those limitations (Doc. 11 at 18; Doc. 15 at 4). The ALJ's RFC findings included only one mental limitation: that plaintiff is limited to work of simple to intermediate complexity (R. at 13). Thus, the ALJ's findings appear to incorporate the opinion of Dr. Cohen that plaintiff is moderately limited in the ability to understand, remember, and carry out detailed instructions. However, without explanation, the ALJ failed to include in his RFC findings the opinion of Dr. Cohen that plaintiff is also moderately limited in 2 other categories: 1) the ability to maintain attention and concentration for extended periods, and 2) the ability to interact appropriately with the general public.

The ALJ indicated that he agreed with the opinions of Dr. Cohen. To the extent that the ALJ based his RFC findings on the opinions of Dr. Cohen, in the case of Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1186-1187 (D. Kan. 2003), the ALJ purported to base his RFC findings

---

[1] Dr. Cohen, on his PRTF form, indicated that one should look at the mental RFC assessment for further restrictions (R. at 366).

9

on the state agency RFC assessment, but failed to explain why he made findings inconsistent with the assessment, or why he rejected portions of the assessment. For this reason, the court held that the ALJ failed to comply with SSR 96-8p. Therefore, to the extent that the ALJ relied on the opinions of Dr. Cohen when formulating his RFC findings, the ALJ failed to comply with SSR 96-8p because his RFC findings are not fully consistent with or reject portions of Dr. Cohen's RFC assessment, and no explanation is provided for failing to include all of Dr. Cohen's limitations.

To the extent that the ALJ simply ignored these limitations by Dr. Cohen, the ALJ clearly erred. An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. It is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).

According to SSR 96-8p:

> If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7. According to the regulations, 20 C.F.R. §

404.1527(f)(2)(i) states that ALJ's must consider findings of nonexamining state agency medical and psychological consultants. Furthermore, 20 C.F.R. § 404.1527(f)(2)(ii) states that unless the treating source opinion is given controlling weight (which did not occur in this case), the ALJ "must" explain in the decision the weight given to the opinions of state agency medical or psychological consultants. SSR 96-6p reiterates that ALJs may not ignore the opinions of state agency consultants, and must explain the weight given to these opinions in their decisions. 1996 WL 374180 at *1, 2.

Defendant argues that other evidence in the record may have served as the basis for the ALJ not including in his RFC findings that plaintiff has a moderate limitation in her ability to interact appropriately with the general public (Doc. 14 at 18-19). However, an ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). By considering legal or evidentiary matters

11

not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). The ALJ clearly erred by failing to provide any explanation for not including all the moderate limitations set forth by Dr. Cohen.

Dr. Cohen also found that plaintiff had a moderate limitation in her ability to maintain attention and concentration for extended periods (R. at 368). This limitation has some support in the report by Dr. Allen, who noted that "her level of fatigue may sometimes get in the way of her sustaining concentration" (R. at 342). The ALJ clearly erred by failing to explain why he did not include in plaintiff's RFC limitations in her ability to maintain attention and concentration for extended periods, or in her ability to interact appropriately with the general public. On remand, these opinions by medical sources should either be included in plaintiff's RFC, or, in the alternative, the ALJ must provide a legally sufficient explanation for not including them in plaintiff's RFC.

The importance and relative impact of these two limitations on a person's ability to work is highlighted in the following cases. In the case of Norris v. Barnhart, 197 Fed. Appx. 771, 775-776 (10th Cir. Sept. 26, 2006), the court held that the ALJ erred by failing to explain why he did not include a in his RFC findings or hypothetical question a limitation by Dr. Smallwood,

a non-examining state agency consultant, who opined that the claimant was moderately limited in her ability to interact appropriately with the general public. As in Norris, in the case before the court (Moore) at least one of the jobs identified by the ALJ as a job that plaintiff could perform (cashier II, Dictionary of Occupational Titles (DOT) 211.462-010) appears to require interaction with the general public. 1991 WL 671840.

In the case of Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996), two medical sources found that the claimant had a moderate limitation in his ability to maintain attention and concentration for extended periods. However, the ALJ failed to include this and other limitations in concentration and persistence in the hypothetical question to the vocational expert (VE). Because these limitations were not included in the hypothetical question, the court held that the VE's testimony could not constitute substantial evidence to support the Commissioner's decision. Furthermore, in this case, the VE testified that a moderate deficiency in concentration and persistence would cause problems on an ongoing daily basis, regardless of what the job required from a physical or skill standpoint. The court remanded the case for further hearing, and directed that the hypothetical question on remand should include claimant's deficiencies of concentration, persistence, or pace so that the vocational expert might accurately determine his ability to work. As noted above,

in the case before the court (Moore), Dr. Cohen generally found on the PRTF that plaintiff had moderate difficulties in maintaining, concentration, persistence or pace (R. at 364), and more specifically found in the mental RFC assessment that plaintiff had moderate limitations in the ability to carry out detailed instructions and in the ability to maintain attention and concentration for extended periods (R. at 368).

The court will next examine issues related to plaintiff's physical impairments and limitations. The ALJ, in making his physical RFC findings, agreed with the opinions of the state agency physical RFC assessment (R. at 17). Plaintiff argues that the ALJ erred by relying on this assessment because it was prepared by a single decision maker (SDM). An SDM is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources. Herrman v. Astrue, Case No. 09-1297-SAC (D. Kan. Sept. 29, 2010; Doc. 19 at 9). It is true that the state agency physical RFC assessment was signed by an SDM (R. at 353). However, Dr. Siemsen reviewed the physical RFC assessment and affirmed it as written (R. at 384).[2] The court finds no error by the ALJ in relying on a RFC

---

[2]Defendant asserted that two physicians affirmed the state agency physical RFC assessment (Doc. 14 at 17). However, it appears that Dr. Warrender reviewed the state agency mental RFC assessment; at the bottom of the page it indicates a "mental-recon" (R. at 383).

14

assessment signed off on by a physician.  Furthermore, plaintiff cites to no medical evidence in the record that clearly disputes the findings contained in the state agency assessment.

Plaintiff also asserts that the ALJ erred by failing to adequately consider plaintiff's obesity when making his RFC findings.  Because this case is being remanded for other reasons, on remand, the ALJ should consider plaintiff's obesity in accordance with SSR 02-1p (evaluation of obesity).  Plaintiff must be able to cite to evidence in the record that his obesity was relevant to his impairments or resulted in greater limitations in his ability to perform work activities.  See Callicoatt v. Astrue, 296 Fed. Appx. 700, 702 (10th Cir. Oct. 20, 2008); Briggs v. Astrue, 221 Fed. Appx. 767, 770-771 (10th Cir. Apr. 9, 2007).  On remand, the ALJ should specifically consider the following entries in Dr. Feuille's treatment records for the plaintiff:

> 6/20/2007: Carletta is needing some disability from social security because of her disability with this entrapped nerve.
>
> 7/5/2007: Carletta was seen by Dr. Jost.  She possibly has a nerve entrapment.  She has also gained 20 pounds recently which has exacerbated this.

(R. at 316).  The ALJ should determine the impact, if any, of plaintiff's obesity on her RFC in accordance with SSR 02-1p.

**III.  Did the ALJ err in his analysis of plaintiff's credibility?**

15

Plaintiff has also argued that the ALJ erred in his evaluation of plaintiff's credibility. The court will not reach this issue because it may be affected by the ALJ's resolution of the case after giving further consideration to the medical evidence as set forth above. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

However, the court will briefly address one finding made by the ALJ when analyzing plaintiff's credibility in order to expedite the resolution of this case when it is remanded. The ALJ noted that plaintiff could care for her personal needs, go outside daily, drive a car, shop, cook simple meals, do household chores such as dusting and sweeping, watch television, and talk on the phone daily. Although the ALJ indicated that plaintiff described limitations in her ability to perform some of these activities, the ALJ stated that "her ability to perform them to any degree suggests that she retains the ability to work full-time" (R. at 16).

Other court decisions have previously found that such a finding is clearly erroneous. Matlock v. Astrue, Case No. 09-1207-MLB (D. Kan. May 7, 2010, Doc. 16 at 24-25); Mount v. Astrue, Case No. 08-1097-WEB (D. Kan. May 14, 2009, Doc. 17 at 16); Toon v. Astrue, Case No. 07-1369-MLB (D. Kan. March 17, 2009, Doc. 18 at 9). Unlike the case of Cobb v. Astrue, 2010 WL 381614 at *5 (10th Cir. Feb. 4, 2010), in which the court held

that the ALJ did not err when the ALJ stated that the claimant's ability to perform activities of daily living to any degree suggested that she retained "some capacity to perform activities such as sitting, standing, walking and functioning in a work environment," 2010 WL 381614 at 5 (emphasis added), the language by the ALJ in the case before the court (Moore) clearly states that plaintiff's ability to perform activities of daily living to "any degree" suggests that plaintiff can work "full-time," or on a regular and continuing basis for 8 hours a day, 5 days a week, or an equivalent work schedule.  See Cobb, 2010 WL 381614 at *5 (the ALJ did not state that claimant's performance of activities of daily living to any degree meant she had the RFC to do sustained work activities on a regular and continuing basis, which generally means 8 hours a day for 5 days a week, or an equivalent work schedule).

Furthermore, according to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity.  20 C.F.R. § 404.1572(c) (2010 at 396).  Although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind

17

that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Thompson, 987 F.2d at 1490. The ability to engage in limited daily activities does not establish that a claimant can engage in substantial gainful activity or perform full-time competitive work. Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005). Therefore, the ability to perform daily activities to any degree does not suggest or establish a claimant's ability to engage in substantial gainful activity or perform full-time work.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 18th day of May 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge